Matter of the Estate of JOHN W. LANDERS, Deceased.

(Surrogate's Court, Oneida County, July, 1917.)

Adoption — legal — by stranger — intestacy — right of half sister to share in estate.

> The right of the half sister of a decedent who died intestate to share in his estate is not lost by reason of her legal adoption by a stranger in whose family she lived until her marriage.

PROCEEDING upon the final judicial settlement of the account of administrators.

W. H. Weller, for administrators.

F. J. De La Fleur, for Loretta Barbur, contestant.

SEXTON, S.   On the 10th day of May, 1916, John
W. Landers died intestate, at the city of Utica, N. Y.

A sister, Margaret L. Bourke, and a half sister, now
Loretta Barbur, survived him.   Loretta was the
daughter of a second wife, but they all had the same
father.

At the age of nine years said half sister, Loretta,
was legally adopted on or about May 20, 1885, by
Thomas Sharp, of Utica, N. Y., and continued to live
thereafter in the Sharp family until her marriage to
Mr. Barbur.

Said Margaret L. Bourke and one William J. Butler,
as administrators of the estate of said deceased
Landers, heretofore filed their final account in which
the claim is made that said sister, Margaret L. Bourke,
is entitled to the entire net estate of her dead brother,
because said Loretta by reason of her adoption lost
her birth given right to share in her natural brother's
estate.

Loretta challenges this contention and affirms
that her adoption by Mr. Sharp in no way affected or
curtailed her right of inheritance from her kindred.

Our statute regulating the distribution of the sur-
plus of the personal property of an intestate is taken
from the English statute of 22 and 23 Charles II,
chapter 10, which was borrowed from the 118th novel
of Justinian, and, except in some few instances men-
tioned in the statute, is governed and construed by
the rules of the civil law, and not, as is the Statute of
Descent, by the common law.

The share which comes to a person under this
statute is designated a distributive share and ascend-
ants and descendants are lineal kindred; other rela-
tives are collateral kindred.   The policy of the law
has been to provide for lineal kindred first and after
them the next kin of equal degree.

The Revised Statutes of the state of New York, passed on the 10th of December, 1828, article 3, title 3, section 75, which covered the duties of executors and administrators in rendering an account and in making distribution to the next of kin, in subdivision 6 thereof provided as follows: " If the deceased leave no children and no representatives of them, and no father, and shall leave a widow and mother, the moiety not distributed to the widow shall be distributed in equal shares to his mother and his brothers and sisters, or the representatives of such brothers and sisters; and if there be no widow, the whole surplus shall be distributed in like manner to the mother, and to the brothers and sisters, or the representatives of such brothers and sisters."

Subdivision 12 of said section 75 provided: " Relatives of the half-blood shall take equally with those of the whole blood in the same degree; and the representatives of such relatives shall take in the same manner as the representatives of the whole blood."

By statutory enactment in 1828, we find the rights of brothers and sisters as to the surplus of an intestate's estate clearly defined. They inherit from each other, where no nearer relative intervenes, the entire net personal estate of the deceased in equal shares, and this is true of half brothers and half sisters. This right having been once given by statute, it can be taken away, only, by statute, or, I may add, by the act of the individual or individuals involved. A careful examination of the statutory law upon this subject discloses no material modification of the statute of 1828 down to the present time touching the subject of brothers and sisters inheriting from one another. The statute as it stands to-day (Decedent Estate Law, § 98, subd. 5) reads as follows: " If

there be no widow, and no children, and no representatives of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives; and if all the brothers and sisters of the intestate be living, the whole surplus shall be distributed to them.''

And subdivision 13 provides: '' Relatives of the half-blood shall take equally with those of the whole blood in the same degree.''

So the law as it now stands on the subject of distribution of personal property of a deceased is substantially the same as the original enactment.

Said Loretta Barbur was adopted by said Thomas Sharp in 1885, prior to which had her brother, said John W. Landers, died intestate, she certainly under the law would have shared his net estate equally with her half sister, Margaret L. Bourke. Did her adoption by Mr. Sharp in any way affect her statutory right to share in the surplus of her half brother's estate, or in any manner curtail it?

If, upon examination of the legislative enactments touching the subject of adoption in this state, we find no reference to the law of distribution among kindred, we will be forced to conclude that Loretta Barbur is entitled to share in the net surplus of her brother's estate equally with her half sister.

Adoption is the taking of a stranger in blood as one's own child. This domestic relation is not the result of '' Yankee '' genius, but is of the remotest antiquity, and was established to console those who had no children of their own.

According to Cicero, adoption produced the right of succeeding to the name, the property and the lares.

Toward the close of the Roman Republic, a declaration by a testator in his will that he considered the

person whom he wished to adopt, as his son, was effectual. Julius Cæsar by will adopted Octavius.

The adoption of children is a form of domestic relation unknown to the common law of England and is exclusively a creature of statute in this country.

In this state the first general statute upon this subject was the Laws of 1873, chapter 830, section 10 of which provides: "A child, when adopted, shall take the name of the person adopting, and the two henceforth shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance."

The act of 1873 was amended by chapter 703, Laws of 1887, in one material particular only in so far as it affects this discussion. The amendment changed the phrase " excepting the right of inheritance " so as to make it read " including the right of inheritance."

The capacity to inherit by an adopted child from the person so adopting was here given for the first time, and without curtailing the right of inheritance from kindred, and in addition, the next of kin of the adopted child was thus defined: " and the heirs and next of kin of the child so adopted shall be the same as if the said child was the legitimate child of the person so adopting."

The effect of this provision was to exclude the natural parents from any rights over the child or to his property by descent or succession, though the child's right of inheritance and succession from his natural parents was to remain unaffected by such adoption. *Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101.

By chapter 272, Laws of 1896, the Domestic Relations Law (Cons. Laws, chap. 14) was enacted as a

compilation, with certain changes and additions of the preceding laws.

Section 64 of that law, now part of section 114 of the same law on the subject of the "effect of adoption" contained the provision: "His rights of inheritance and succession from his natural parents remain unaffected by such adoption." The legal relation of parent and child established by the laws of 1873 and 1887, and the obligations imposed thereby remained unchanged.

There was a further amendment of this statute by the Laws of 1897, chapter 408, upon the subject of "effect of adoption" only, which seemingly further protected the rights of the child, in case of divorce, or a stepfather or stepmother coming into the family, but in no way affected the adopted child's statutory right to inherit from kindred. The subsequent amendments of the Domestic Relations Law (Laws of 1909, chap. 19, § 114; Laws of 1915, chap. 352, and Laws of 1916, chap. 453) are wholly immaterial in so far as they affect the relation of the adopted child to his kindred, and in no manner curtailed or modified the legal rights of the adopted child to inherit from his kindred as provided by the law of descent and distribution.

Every enactment on the "effect of adoption" since 1887 has contained this provision—"His rights of inheritance and succession from his natural parents remain unaffected by such adoption."

The right of inheritance is a subject exclusively under the control of the state legislature, and it has the right, and may give heritable blood when nature did not. Very likely, because of the change of parents by adoption, the legislature, that no privileges might be lost to the child, or legal rights formerly possessed, provided that the rights of inheritance and succession from his natural parents should remain unchanged as

a result of adoption proceedings. To the other kindred of the adopted child, no reference is made because there is no altered relation created by statute. Brothers and sisters of the natural blood, whether adopted into other families or not, continue to be brothers and sisters, and it seemingly was not the intention of the legislature by the law of adoption to modify the blood or legal relation existing among kindred, except as modified by enactments describing the new relations of the natural parents and the adopting parents. This being so, it will not be presumed that the legislature, without having spoken upon the subject, intended to take from a sister the right of inheritance which she possessed before the law of adoption was written into the statutes of our state.

The natural parents cannot inherit from the adopted child, but the adopted child continues to inherit from the natural parents; then why not from natural brothers and sisters and from other kindred. There has been thrown around an adopted child by statutory enactment a new relation, and an opportunity for additional inheritance without depriving the child of any inheritance that he would have been entitled to, provided no adoption had taken place. This idea is only a perpetuation of the law in vogue among the Romans which provided: " The effect of the adoption was also modified in such a manner that if a son was adopted by a stranger, he preserved all the family rights resulting from his birth, and at the same time acquired all the family rights produced by the adoption."

In Spencer on Law of Domestic Relations the author says, on pages 422 and 423: " In the absence of special statute to the contrary, an adopted child inherits from the adoptive parent the same as a natural child, and the lineal descendants of an adopted child

41

inherit from him, though the property in question was derived from the adopting parent. The policy of the statutes and decisions, however, is to confine the right of succession and inheritance of such child to the adopting parent as distinguished from his or her lineal or collateral kin. But an adopted child, if its natural parents be living, may sustain for purposes of inheritance the relation or status of child to two families. It may usually inherit from both its natural and its adopted parents, and from the kindred of the former, but not from the ancestors or descendants of the latter or from their collateral kin, for to these it bears no relationship, actual or conventional." *Durkee* v. *Batcheller,* L. R. A. 1916 E. P. 550.

" The act of adoption does not take away any existing rights or destroy the legal capacity to inherit from natural parents." *Patterson* v. *Browning,* 146 Ind. 160; *Humphries* v. *Davis,* 100 id. 274; *Head* v. *Leak,* 111 N. E. Rep. 952.

All of the decisions to which my attention has been called treat of the legal rights arising from the new relations between the adopted and adopting parties. My attention has been called to no authority in this or any other state, nor have I been able to find any, which even hints at the possibility of an adopted child losing his rights of inheritance from natural kindred by reason of adoption. That the question is here raised for the first time is evidence that the genius of the bar still lives.

If the foregoing reasoning is orderly, it follows, and I hold and decide that Loretta Barbur and Margaret L. Bourke shall equally divide the net surplus of the estate of said deceased.

Decreed accordingly.