Richard J. Sherman, J.
The record disclosed that “ Frances Wood ” filed a complaint in this court under date of November 25, 1958 alleging that ‘ ‘ Ralph Howe ’ ’ is the father of ‘ ‘ Ralph Carl Wood ” born to complainant out of lawful wedlock and that he has failed to provide the expenses of the complainant’s confinement and recovery and other expenses in connection with her pregnancy. The complaint further alleges acts of sexual intercourse with said “Ralph Howe” during the months of October and November, 1956, and that as a result of said acts, the complainant became pregnant and on August 6, 1957 she gave birth to a male child, “ Ralph Carl Wood ”.
The prayer for relief requests that “ Ralph Howe ” be found to be the father of “Ralph Carl Wood ” the child of the complainant and that respondent be ordered to pay for the confinement expenses of complainant and the child, the expenses of complainant’s recovery, her loss of wages during pregnancy, the cost of special clothing necessary to her condition, the amount of rent paid by complainant during the period of her *1049 pregnancy and while complainant was not living at her home with her parents, and for her counsel fees, together with any and all other expenses sustained by her by reason thereof, according to the provisions of article VIII of the Domestic Relations Law.
On January 9, 1959 the parties appeared by their attorneys. The respondent did not appear in person and his attorney was advised to produce him. The matter was adjourned to January 16, 1959 at which time all of the parties and their respective attorneys were present. The complaint was read and the respondent was fully advised as to his rights, including a blood grouping test. The respondent entered a plea of not guilty and demanded a blood test of all the parties. A blood grouping test was then ordered by the court; the test to be made by Dr. Joseph W. Lebowich of the Saratoga County Laboratory.
On the adjourned day, February 6, 1959, it was ascertained by the court that the test had not been held, because the alleged child had been previously adopted and that the adoptive parents were reluctant to produce the child for such test. Another order for a blood test was granted and the hearing adjourned to February 27,1959 at which time, the attorney for the respondent moved for a dismissal of the filiation proceeding upon:
(1) That Children’s Court was without jurisdiction;
(2) That the child had been adopted prior to the institution of this proceeding;
(3) That the rights of complainant had ceased upon the granting of the final order of adoption;
(4) That complainant was guilty of laches; and
(5) That no order of this court can be made requiring the adoptive parents to produce the child for a blood test.
It appears that the final order of adoption was granted by the Saratoga County Judge on or about November 15, 1957 and it is to be assumed that the complainant consented to said adoption. The papers in the adoption proceeding are sealed and not a part of the record in this case; nor does it appear that the complainant has instituted a proceeding for the abrogation of the adoption order. It is further to be presumed that the original birth certificate of the child is no longer a matter of record.
The Domestic Relations Law of the State of New York must be taken into consideration, as well as the provisions of the Children’s Court Act relating to filiation proceedings in order to arrive at a determination.
The act of adoption fixes a status of parent and child. More technically, it is an act by which relations of paternity and *1050 affiliation are recognized as legally existing between persons not so related by nature. (Matter of Landers, 100 Misc. 635.)
In New York State adoption is the legal proceeding whereby an adult person takes another adult person or a minor, into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such adult or minor. (Domestic Relations Law, § 110.)
Here we are concerned with the effect of adoption prior to the institution of filiation proceedings. The purpose of the statute declaring the effect of adoption is to define the relation, after adoption, of the child to its natural parent, and to its adopting parents. Generally speaking, the effect of adoption is to divest the natural parent of her former relationship to the child given out to be adopted, investing the foster parents and the adopted child with the legal relation of parent and child.
The leading case in point is Betz v. Horr (276 N. Y. 83). In that case the court said (pp. 88-89): “To bring about the result arrived at by the lower courts it would be necessary to read into section 114 of the Domestic Relations Law an intent to preserve the duty and responsibility of the natural parent to support the child notwithstanding the plain and unambiguous provision that, after adoption, all responsibility of the natural parent for the child ceases, and to read into section 125 of the Public Welfare Law and into the provisions of the Domestic Relations Court Act [of the City of New York] and Code of Criminal Procedure, ■* * * a meaning of the term 1 father ’ or ‘ parent ’ which covers, at the same time, both the natural father whose responsibilities have ceased and the foster father whose responsibilities are absolute after adoption.”
The language of the statutes must be strictly followed, and courts are not permitted to read into the statutes a different meaning, purpose or intent. In this connection, the only statute authorizing the production of the child is a proceeding to abrogate the order of adoption.
Reverting for a moment to the adoption proceeding, by section 111 of the Domestic Relations Law, the consent of the mother of a child born out of wedlock is required.
The legal effect of section 114 of the Domestic Relations Law was to make the adopted child the natural child of the adoptive parent. (Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101, 108. See, also, Matter of Cook, 187 N. Y. 253, 260.)
The adoption divests the natural parents of the relation which they had theretofore sustained toward the infant and such *1051 change of relation is in no way affected by the death of the foster parent or parents. (Matter of MacRae, 189 N. Y. 142.)
1 ‘ After the making of an order of adoption the parents of the foster child shall be relieved of all parental duties toward and of all responsibility for and shall have no rights over such foster child”. (Domestic Relations Law, § 115. Italics supplied.)
There are any number of cases holding that adoption relieves the natural parent from all responsibilities, after adoption.
Let us now pass on to that portion of the Domestic Relations Law dealing with children born out of wedlock.
By section 126-a “ The court, on motion of the defendant, shall order the mother, her child and the defendant to submit to one or more blood grouping tests ”.
This, the court has done, but conceivably, it cannot issue an order directed to the foster parents who are not parties to this proceeding. Furthermore, after the child has been with the adoptive parents for over six months during the probationary period and a final order of adoption granted, it would be against the conscience of the court to grant an order to disturb the relationship that exists between the adoptive parents and the child, to tear the child from the arms of the adoptive parents, and require the child to have a blood test under such circumstances.
Section 114 of the Domestic Relations Law provides among other things: 11 The fact that the foster child was born out of wedlock shall in no case appear in such order.” If it is illegal for such fact to appear in an order of adoption, then it is quite improper in this proceeding to disclose the names of the parties concerned, and perhaps disclose to the adoptive parents such facts as would again disturb the relationship between foster child and foster parents.
In a proceeding for the abrogation of the adoption orders the statute definitely states that such Judge or Surrogate shall have the power to order or compel the production of the person of such foster child. (Domestic Relations Law, § 117.)
No such language exists as to a filiation proceeding after adoption.
Finally, it is the opinion of this court that adoption establishes paternity. Even probation in a filiation proceeding ceases upon adoption.
For all the reasons stated in the motion to dismiss, and for the additional reason that the statute only permits the production of the child in a proceeding to abrogate the order of adoption, the motion to dismiss is in all respects granted.