OPINION OF THE COURT
Titone, J.
The question presented is whether a child born out of wedlock, who is adopted out of his biological family at birth, is entitled *153 to a share of a trust estate devised by his biological grandmother to her daughter’s issue. The Surrogate’s Court entered a decree in the child’s favor, which has been unanimously affirmed by the Appellate Division. We granted leave to appeal and now reverse.
Jessie C. Best died in 1973, leaving a will which provided for a residuary trust. Her daughter, Ardith Reid, was designated as the income beneficiary. Upon Ardith’s death, the trustees were directed to "divide [the] trust fund into as many shares or parts as there shall be * * * issue * * * and to continue to hold each of such shares or parts in trust during the life of one of said persons.” The remainder is to be paid to the surviving descendants at the latest possible date consistent with the Rule against Perpetuities.
Initially, the executors of the Best will, who are also the trustees of the residuary trust, believed that Ardith had only a single son, appellant Anthony R. Reid, born in 1963. In 1976, however, they were informed that Ardith had given birth to a child out of wedlock in 1952, and that the child had been immediately placed with an agency for adoption. Ardith confirmed that the information was accurate.
Concluding that it was necessary to cite this unknown child in order to complete jurisdiction in a proposed accounting proceeding, the fiduciaries obtained Ardith’s authorization to ascertain the child’s identity and whereabouts. Attorneys contacted the adoption agency, which, though finding the request "unusual,” took the position that, given the apparently large value of the beneficial interest involved, the question of disclosure should be left to the discretion of the adoptive parents. A caseworker was dispatched and the adoptive parents subsequently revealed that the child’s present identity was David Lawson McCollum, and that requisite proof of natural ancestry could be obtained in a sealed file at the Surrogate’s Court, Nassau County.
After Ardith’s death, the trustees commenced this construction proceeding, seeking to determine the proper secondary income beneficiary or beneficiaries, the accounting proceeding having left the question open. On cross motions for summary judgment, the Surrogate’s Court, Westchester County, directed that McCollum be included as an issue of Ardith Reid and, as such, a beneficiary under the trust. The Surrogate declined to apply the common-law presumption that the term issue referred only to descendants born in wedlock, in favor of a rule espoused by the Appellate Division, First Department, which presumes that issue includes descendants born both in and out of wedlock (Matter of Hoffman, 53 AD2d 55). In addition, the Surrogate construed Do *154 mestic Relations Law § 117, which describes the consequences attached to an order of adoption, as cutting off only the right to intestate descent and not affecting the right to take a class gift under the will of a biological ancestor. The Surrogate recognized that this holding would create a myriad of practical difficulties and might lead to a breach of the privacy of adoption proceedings, but believed that the solution was legislative. The Appellate Division unanimously affirmed in a Per Curiam opinion, essentially adopting the Surrogate’s reasoning. We now reverse and remit for the entry of a decree in conformity with this opinion (SCPA 2702).
Use of the term issue in a dispositive instrument has always been viewed as ambiguous, with its meaning depending on the intent of the decedent as derived from the content of the entire will (Palmer v Horn, 84 NY 516, 519; 5 American Law of Property §§ 21.49,22.36 [1952 Casner ed]; 2 Simes and Smith, Future Interests § 738 [2d ed]). Shaped by the mores of the day, the common-law courts tended to give the term a restrictive interpretation (Bergin and Haskell, Preface to Estates in Land and Future Interests, at 232 [2d ed]), and viewed a child born out of wedlock as the "child of nobody” (5 American Law of Property § 22.33, at 325 [1952 Casner ed]). Absent a contrary indication in the will, such a child was deemed to be presumptively excluded from taking a class gift to issue (see, e.g., Hiser v Davis, 234 NY 300, 305; Matter of Underhill, 176 Misc 737, 739 [Foley, S.]; 9 Rohan, NY Civ Prac, EPTL ¶ 1-2.10 [3]; Restatement of Property § 286 [1]; § 292).
EPTL 1-2.10, added in 1966, defines "issue” as descendants in any degree from a common ancestor, unless a contrary intention is indicated, and specifically includes children adopted into the family, thus resolving a conflict which had existed in decisional law (see, 2 Simes and Smith, Future Interests § 738, n 40 [2d ed]) in favor of inclusion (9 Rohan, NY Civ Prac, EPTL ¶ 1-2.10 [2]; Note, Adopted Children as Issue — Settlor’s Intent, 27 Brooklyn L Rev 177). Other than that clarification, the Revisors’ Notes indicate that the section merely codifies decisional law (Revisors’ Notes to EPTL 1-2.10, McKinney’s Cons Laws of NY, Book 17B, p 22; see also, 9 Rohan, NY Civ Prac, EPTL ¶ 1-2.10 [1]; Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 1-2.10, p 20).
Contemporary social mores and constitutional doctrine governing the rights of children born out of wedlock suggest that drafters now view the unmodified term issue to refer to children born both in and out of wedlock (see, Matter of Hoffman, 53 AD2d *155 55, supra; Matter of Lyden, 96 Misc 2d 920; Matter of Leventritt, 92 Misc 2d 598; Note, In Re Hoffman, 5 Hof L Rev 697, 703-704), and we now hold this to be a rebuttable rule of construction. Respondent, however, who was adopted out of his biological family shortly after birth and has full inheritance rights through his adoptive family (EPTL 1-2.10; Domestic Relations Law § 117), can reap no benefit from this change of constructional rules. Unlike the child born out of wedlock who, but for the abrogation of the common-law presumption of exclusion, would have no right to inherit as the issue of any parent, what respondent, in effect, seeks here is inheritance rights as the issue of both his biological and his adoptive parents.
Powerful policy considerations militate against construing a class gift to include a child adopted out of the family.[1] In detailing adoption procedures (see, Domestic Relations Law art 7), the Legislature clearly intended that the adopted child be severed from the biological family tree and be engrafted upon new parentage (see, Matter of Cook, 187 NY 253, 260; Matter of "Wood” v "Howe”, 15 Misc 2d 1048, 1050). Recognition of a right to inherit class gifts from biological kindred would be inconsistent with the child’s complete assimilation into the adoptive family and thus contrary to legislative intent (see, Binavince, Adoption and the Law of Descent and Distribution: A Comparative Study and a Proposal for Model Legislation, 51 Cornell LQ 152, 165).
Moreover, in order to encourage the adoptive relationship to flourish and solidify without outside interference, the Legislature has directed that the confidentiality of adoption records be maintained (Domestic Relations Law § 114). This secrecy, which we have identified as vital and beneficial to the entire adoption process (Matter of Walker, 64 NY2d 354, 360-361; Matter of Linda F. M., 52 NY2d 236, 239 appeal dismissed sub nom. Mason v Abrams, 454 US 806; see also, Alma Socy. v Mellon, 601 F2d 1225, cert denied 444 US 995), would be easily breached if children who are adopted out of a family are presumed to be takers of class gifts from biological ancestors, as ascertaining whether rights of inheritance exist might well be good cause for access. This case itself is of moment for we can detect the hydraulic pressure faced by the adoption agency in passing on the request for disclosure.
Inclusion of adopted-out children within the ambit of class gifts *156 would also undermine the stability of real property titles as well as other property rights passing under Surrogate’s Court decrees (see, former Surrogate Sobel’s comprehensive analysis in Matter of Flemm, 85 Misc 2d 855, 859, quoted with approval in Lalli v Lalli, 439 US 259, 270). Finality of such decrees could never be achieved because there would always lurk the possibility, no matter how remote, that a secret out-of-wedlock child had been adopted out of the family by a biological parent or ancestor of a class of beneficiaries. No search conducted by a personal representative would ever be complete and there is obviously no way to cite and serve an out-of-wedlock child who is adopted out of the family when the survivors may not even be aware of the person’s existence.
Domestic Relations Law § 117 certainly does not preserve the right to inherit a class gift in such circumstances. That section terminates all rights of intestate succession but does "not affect the right of any child to distribution of property under the will of his natural parents or their natural or adopted kindred” (Domestic Relations Law § 117 [2]). The evident purpose of the statutory provision, as expressed in the reports of the Bennett Commission on the Law of Estates, was "to place the adopted child for inheritance purposes in the bloodstream of his new family just as a natural child, and sever insofar as possible all connection with the natural family” (Second Report of Temporary State Commn on Modernization, Revision and Simplification of Law of Estates, 1963 NY Legis Doc, No. 19, at 25, 147, n; see also, Legislation, New York’s Law of Estates and Distribution: The New York Status of the Adopted Child, 38 St. John’s L Rev 380). Thus, while a child adopted into a family is to be presumed included within the term issue "[ujnless a contrary intention is indicated” (EPTL 1-2.10 [a]; see, Matter of Park, 15 NY2d 413; Note, 15 Buffalo L Rev 209; Note, 11 NYLF 522), a child adopted out of the family is not (see, Binavince, op. cit., 51 Cornell LQ 152, 164-173). Only if a child adopted out of the family is specifically named in a biological ancestor’s will, or the gift is expressly made to issue including those adopted out of the family, can the child take. In short, Domestic Relations Law § 117 does not mandate that such a child receive a gift by implication.[2]
We are aware of the passage of a bill designed to overturn the Appellate Division and Surrogate’s Court holdings in this case as *157 well as its subsequent veto by the Governor. The Governor’s veto rested upon ambiguities in the bill and the lack of consensus within the legal community as to the best approach to the question (Veto Message No. 106, 1984 NY Legis Ann, at 403). The Law Revision Commission, following a study, has recommended a new bill, which it has submitted for legislative consideration (1985 NY Legis Doc, No. 65 [N], 1985 McKinney’s Session Laws of NY, at — [Pamphlet No. 3, June 1985, at A-554]). (Cf. Uniform Adoption Act § 14 [9 ULA Master ed]; Uniform Probate Code § 2-109 [1] [8 ULA Master ed]; Ann., 96 ALR2d 639; Binavince, op. cit, 51 Cornell LQ 152.)
These developments, while of interest, are of no moment. Until this court has resolved an issue of first impression, legislative activity or inactivity does not constitute an endorsement of the result reached by other courts (see, Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84, 90; cf. City of New York v Saper, 336 US 328, 338-340; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 432-433). Moreover, statutory enactments governing decedents’ estates are generally not given a retrospective operation (McKinney’s Cons Laws of NY, Book 1, Statutes § 56; see, Monroney v Mercantile-Safe Deposit & Trust Co., 291 Md 546, 435 A2d 788). Any legislative solution would thus be incomplete and the damage we perceive would result to public policy would be irreparable.
For the reasons stated, the order of the Appellate Division should be reversed, with costs to all parties filing briefs, payable out of the estate, appellant’s motion for summary judgment granted, respondent’s motion for summary judgment denied, and the matter remitted to Surrogate’s Court, Westchester County, for the entry of a decree in accordance with this opinion.

. Different considerations might apply in hybrid cases, such as where a child is adopted by two descendants in some degree from a biological parent or parents or by one such person and a spouse who is a total stranger to the family. That question is not before us and we express no opinion on it.

. Without more there is no basis in the dissenters presumption that the testatrix intended to include the respondent, a child adopted out of the family, within a generic class entitled to inherit.