In the Matter of JONATHAN T. GARDINER, Deceased. BANK OF NEW YORK, Respondent; OLNEY M. GARDINER et al., Respondents; FRANCES G. COLLINS et al., Appellants.

Second Department, December 30, 1985

### APPEARANCES OF COUNSEL

*John P. Campbell (David J. van Hoogstraten* of counsel), guardian ad litem for Michael D. Gardiner and another, infants, and for unknown male relatives of Jonathan T. Gardiner, bearing the surname Gardiner.

*Smith, Finkelstein, Lundberg, Crimmins & Yakaboski (Howard M. Finkelstein* and *Frank A. Isler* of counsel), for Frances Gardiner Collins, appellant.

*Ingerman, Smith, Greenberg & Cross (Jelije De Jong* of counsel), for William LeRoy Gardiner, Jr., and others, appellants.

*Emmet, Marvin & Martin (John E. Bennett* and *Stephen P. Cerow* of counsel), for Bank of New York, respondent.

*Milbank, Tweed, Hadley & McCloy (Andrew J. Connick* and *Carolyn C. Clark* of counsel), for Olney Mairs Gardiner, respondent.

### OPINION OF THE COURT

O'CONNOR, J.

These appeals are concerned with the right of respondent Olney Mairs Gardiner to inherit the corpus of a testamentary trust created by the will of Jonathan T. Gardiner, despite the restrictions imposed on such inheritance by a statutory provision known as the "precautionary addendum". The trust contains approximately $2,985,000 in principal and income, including real estate valued in excess of $2,931,000 in 1982, at least one parcel of which, apparently, has been owned by a member of the Gardiner family since 1638 pursuant to a land grant made by King Charles I of England.

Jonathan T. Gardiner, a resident of East Hampton, New

York, died on August 6, 1933. He left a will executed on January 25, 1932. The will set up two testamentary trusts for his two grandnieces, Isabelle Gardiner Mairs and appellant Frances Gardiner Collins. Article FOURTH of the will established an additional testamentary trust for the benefit of Jonathan's grandnephew, Winthrop Gardiner, Jr., consisting of the bulk of his estate, which is the source of the dispute in the instant case. Article FOURTH of the will provides as follows: "FOURTH: *All the rest, residue and remainder of my property, of whatsoever nature and wheresoever situated, I give, devise and bequeath to my Executor and Trustee, hereinafter named, IN TRUST, NEVERTHELESS * * * to accumulate the income until my grandnephew, WINTHROP GARDINER, JR., arrives at the age of twenty-one (21) years.* When my said grandnephew, Winthrop Gardiner, Jr., arrives at the age of twenty-one (21) years, I direct that all accumulations of income shall be forthwith paid over to him. Thereafter I direct my said Executor and Trustee to pay over the entire net income derived from the trustee estate to my grandnephew, Winthrop Gardiner, Jr., during the term of his natural life, in quarterly payments * * * *Upon his death, I direct that the said trust shall cease, terminate and come to an end, and, upon his death, I give devise and bequeath the principal of the trust estate to his oldest living son, and, in the event that he shall leave no son him surviving, I give, devise and bequeath the same to such male relative of mine bearing the name Gardiner as my said grandnephew, Winthrop Gardiner, Jr., shall appoint in and by his Last Will and Testament, and, in the event that my said grandnephew, Winthrop Gardiner, Jr., shall die without leaving a son him surviving, and shall fail to exercise such power of appointment, then, and in that case, I direct that my Executor and Trustee sell, as soon after the death of my said grandnephew, Winthrop Gardiner, Jr., as practicable, all of my real property as is included in my said residuary estate, or such portion or portions thereof as shall not theretofore have been sold,* in such manner and for such prices as in the judgment of my said Executor and Trustee shall be to the best interests of my estate, *provided, however, that such sale be made to, and only to, some male relative of mine bearing the surname 'Gardiner', the proceeds of the sale of which, together with the remainder of my said residuary estate, I hereby give and bequeath to my aforesaid grandnieces, Isabel Gardiner and Frances Delaney Gardiner, share and share alike, or to their survivor, and in the event that neither*

*of my said grandnieces should survive my said grandnephew, then I give and bequeath aforesaid proceeds, together with said remainder of my said residuary estate, to such persons who would at that time inherit the same under the Laws of the State of New York if my said grandnephew had died intestate the owner thereof"* (emphasis added).

Thus, article FOURTH of the will set up a trust for the benefit of Winthrop Gardiner, Jr., to be administered by the executor and trustee, the Bank of New York and Trust Company (now known simply as The Bank of New York), which, upon the death of Winthrop, became payable to his oldest living son. If Winthrop did not leave a surviving son, the will provision granted him a testamentary power of appointment to transfer the property to a male relative of Jonathan T. Gardiner bearing the surname of Gardiner. If Winthrop did not leave a surviving son and failed to exercise the testamentary power of appointment, the real estate remaining in the trust, which had not been previously sold by the executor and trustee pursuant to the authority granted in article SIXTH of the will, would be sold by the executor and trustee to a male relative of Jonathan's bearing the surname Gardiner. The proceeds of the sale were to be paid to the two grandnieces, or the survivor, unless both of them failed to survive Winthrop. Jonathan's will was admitted to probate in the Surrogate's Court, Suffolk County, on September 30, 1933.

The dispute in this case arose because Winthrop Gardiner, Jr., the decedent's grandnephew, died on October 16, 1980, without leaving a surviving natural son. However, Winthrop had adopted his nephew. The nephew was born on June 26, 1942 (nearly nine years after the death of Jonathan T. Gardiner) to Olney Blanchard Mairs, Jr., and Isabelle Gardiner Mairs, one of the decedent's grandnieces, and on his birth certificate was named Olney Blanchard Mairs III. On August 14, 1974, over 40 years after Jonathan's death and when Olney was 32 years old, Winthrop Gardiner, Jr., and his wife, Beth Neher Gardiner, adopted Olney pursuant to an order of the Family Court, Suffolk County (Jones, J.), and upon his adoption he took the name of Olney Mairs Gardiner. It is alleged that Olney had lived much of the time with his uncle Winthrop. Upon his death, Winthrop, a resident of Broward County, Florida, left a will which indicated that his granduncle's will created a trust for his benefit that would pass to his oldest living son upon his death. Winthrop's will, which was executed on February 12, 1975, and which was admitted to

probate in Florida on January 12, 1981, stated in relevant part: "I hereby state that my only son is OLNEY MAIRS GARDINER, of 4935 MaConnel Avenue, Los Angeles, California 90066. To the extent that [it] may be necessary for me to exercise the power of appointment in [paragraph Fourth of the will of Jonathan T. Gardiner], I then do exercise the same and appoint the principal remaining to my said son."

Ancillary letters testamentary were issued by the Surrogate's Court, Suffolk County, on November 4, 1981. On or about March 17, 1983, the executor and trustee under Jonathan's will, the petitioner-respondent The Bank of New York, filed a petition for judicial settlement of its account in the Surrogate's Court, Suffolk County, and on or about October 28, 1983, it moved for summary judgment on the prayer for relief contained in its petition. Olney Mairs Gardiner joined in its motion for summary judgment. The petitioner requested that the will of Jonathan T. Gardiner be construed in such a manner that the trust corpus be paid to Olney Mairs Gardiner pursuant to article FOURTH of Jonathan's will. The petitioner further noted that approximately 50 male relatives of Jonathan T. Gardiner with the surname of Gardiner might have an interest in the will, as well as Winthrop's two sisters Isabelle Gardiner Mairs and Frances Gardiner Collins, both of whom survived Winthrop.

The opponents of the petition, certain named contingent remaindermen and the guardian ad litem for other contingent remaindermen, contended that Olney could not inherit the corpus of the testamentary trust because he was not the oldest living son of Winthrop, nor could he be considered a male relative of the testator, Jonathan T. Gardiner. Specifically, the opponents contended that (1) Olney could not inherit under the will because he is an adopted son, and because of a statutory provision known as the "precautionary addendum", which was in effect on the date that Jonathan T. Gardiner died (Domestic Relations Law former § 114, as amended by L 1931, ch 562), the adoption of a child cannot cut off the rights of remaindermen to inherit under a will where a provision thereof is dependent on the adoptive parent dying without heirs, (2) Olney cannot inherit pursuant to the testamentary power of appointment exercised by Winthrop, since Olney's right to inherit through his natural relatives was destroyed when he was adopted by Winthrop (Domestic Relations Law § 117 [1]), and (3) the adoption of Olney by Winthrop constituted a fraudulent scheme to cut off the remaindermen from

their right to the corpus of the trust, the testator not intending to have someone born almost nine years after his death and adopted by his grandnephew over 40 years after his death to inherit under the will, especially since there was no express provision in the will permitting adopted children to inherit the corpus of the testamentary trust. Appellant Frances Gardiner Collins also attacked the constitutionality of the contingent remainder clause insofar as it limited the power to sell the real property contained in the trust to male relatives of Jonathan T. Gardiner bearing the surname Gardiner, and subsequently cross-moved for partial summary judgment directing that one half of the remainder of the corpus of the trust be paid to her and the other half to her sister, Isabelle Gardiner Mairs, on the ground that this was the testator's intent. In the event that this relief was denied, she requested discovery in order to determine the basis and motive for the adoption of Olney Mairs Gardiner by Winthrop Gardiner, Jr. The guardian ad litem cross-moved for similar relief, adding that the power of sale provision of the contingent remainder clause, which limited those to whom the real property could be sold to male relatives of Jonathan T. Gardiner bearing the surname Gardiner, should be construed as a right of first refusal.

The Surrogate granted the motions of the executor and trustee and Olney Gardiner Mairs, and denied all other motions. The general policy of the State, the court reasoned, is to treat adopted children on an equal footing with natural children with respect to inheritance rights, and a testator is presumed to have intended to include adopted children in the class of persons who may inherit under the will unless a contrary intention is expressed therein. Although the will at bar was subject to the precautionary addendum, which prevented an adoption from terminating the rights of remaindermen under the will, the Surrogate determined that because the decedent's will contained a testamentary power of appointment, Winthrop Gardiner, Jr., could have cut off the rights of the remaindermen at any time prior to his death by merely exercising the power of appointment. Therefore, in view of the fact that the vesting of the remainder interest was dependent not on the adoption, but upon the whim of the donee (see, Matter of Charles, 200 Misc 452, affd 279 App Div 741, affd 304 NY 776), and because Olney's adoption by Winthrop was not the sole cause of the remaindermen being cut off from inheriting under the will, Olney was entitled to inherit the

corpus of the trust by virtue of the testamentary power of appointment exercised by Winthrop in his will. The Surrogate further held that the motivation for the adoption had no relevancy in the determination of whether to apply the precautionary addendum (see, Matter of Rockefeller [Hubbard], 12 NY2d 124). The court also found that there were no other issues of fact to be determined, and denied all other motions. While we agree with the result reached by the Surrogate, we do not agree with his reasoning.

In 1887 the Legislature adopted a statute affording an adopted child equal legal footing with natural children, including the right to inherit from his or her adoptive family (L 1887, ch 703). However, the statute contained a limitation on the right of an adopted child to inherit from his adoptive family, known as the "precautionary addendum" (see, Matter of Lawrence, 86 Misc 2d 579, 584-585). This limitation was included in the subsequently enacted Domestic Relations Law (see, Domestic Relations Law of 1896 § 64 [L 1896, ch 272, as amended by L 1897, ch 408]; Domestic Relations Law of 1909 § 114 [L 1909, ch 19, as amended by L 1915, ch 352]; Matter of Lawrence, supra). On the date of Jonathan T. Gardiner's death in 1933, the precautionary addendum was contained in Domestic Relations Law § 114 (L 1931, ch 562), which applies in this case because "[t]he effect of an adoption order upon the distribution of a decedent's estate is governed by the law in effect at the time of the decedent's death and not by the law in effect at the time of the adoption" (see, Matter of Heverly, 113 Misc 2d 925, 928, citing Matter of Trainor, 45 Misc 2d 316, 317; Carpenter v Buffalo Gen. Elec. Co., 213 NY 101; 5 Warren's Heaton, Surrogates' Courts § 466 [1] [aa]). The statutory provision in effect at the date of Jonathan T. Gardiner's death read as follows: "The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other * * * but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen" (Domestic Relations Law former § 114, as amended by L 1931, ch 562, § 7; precautionary addendum emphasized).

The provision was reenacted without change as Domestic Relations Law former § 115 (L 1938, ch 606), and was later

renumbered as Domestic Relations Law former § 117 (L 1961, ch 147). It remained effective until the Legislature removed it from the statute in 1963 (L 1963, ch 406, eff Mar. 1, 1964), and remains applicable to wills of persons dying prior to March 1, 1964 (Domestic Relations Law § 117 [3]).

The precautionary addendum limits the right of the adopted child to inherit where, but for the adoption, a remainderman or remaindermen, if any, designated in the decedent's will would inherit. The provision applies where future estates may be cut off by an adoption (see, Matter of Horn, 256 NY 294, 297; Matter of Cohn, 184 Misc 258, 261-262, affd 271 App Div 775, affd 297 NY 536; Matter of Lawrence, supra, at p 588). Despite the repeal of the precautionary addendum in 1963, courts have struggled with this provision and have attempted to find ways to avoid it. In Matter of Upjohn (304 NY 366), the Court of Appeals held that where the testator knew that his childless niece had adopted a child prior to the execution of his will, and knew that the adopted child would probably be his only descendant, that child could inherit under the will despite the precautionary addendum. However, in Matter of Ricks (10 NY2d 231), the Court of Appeals held that there was a presumption that the testator only intended to include natural, blood relatives in his will absent an express direction to the contrary. Therefore, where the descendants of the testator included both natural and adopted children, only the natural children could inherit due to the precautionary addendum and because there was no expression in the will that adopted children could inherit. Three Judges dissented on the ground that the statute places adopted children on equal legal footing with natural children. The legislative abolition of the precautionary addendum followed shortly thereafter.

Subsequently, in Matter of Park (15 NY2d 413, 416), the Court of Appeals made "[a] fresh reading of the statutory prescription that natural children and foster children be treated as equals in legal rights, which [had] been in effect in New York almost 80 years". Matter of Park (supra), involved a situation where one of the testator's grandchildren was survived by a natural daughter and an adopted son. The court held that both of those children could inherit under the will because the adoptive parent, the child of the testator, would not have died without heirs even if he had not adopted a child (Matter of Park, supra, at p 419): "Since in the present case the foster parent in no event would have died 'without heirs' " (which would otherwise trigger the statutory provi-

sion) "this statutory language accordingly is not controlling". Similarly, in *Matter of Silberman* (23 NY2d 98), the court, applying the *Park* presumption, held that both natural and adopted children (of the same generation) could inherit under the testator's will despite the precautionary addendum.

Subsequent court decisions which have dealt with the precautionary addendum problem can best be termed contradictory and confusing. Thus, in *Matter of Washburn* (24 AD2d 83, *affd without opn* 17 NY2d 895), the Third Department held that the son of an adopted child of a surviving brother could not inherit under the decedent's will due to the precautionary addendum, since he would defeat the rights of the remaindermen named in the surviving brother's will to take under that will. In both *Matter of Schermerhorn* (NYLJ, Aug. 9, 1968, p 9, col 6, *affd without opn* 33 AD2d 891), and *Matter of First Natl. City Bank (Hilton)* (36 AD2d 514), it was held that the *Park-Silberman* presumption applies in circumstances where the precautionary addendum is otherwise applicable. Hence, the court found that the adopted child in those cases could inherit under the testator's will. The court in *Matter of First Natl. City Bank (Hilton) (supra),* noted that the instrument at issue (a trust agreement) used the term "descendant", but did not explicitly define that term, nor was there any specific language in the instrument indicating that the settlor did not consider an adopted child a descendant. On the other hand, this court has held that the presumption that a testator intended to include adopted children among the class of persons who could inherit under his or her will, unless the will contains express language to the contrary, does not apply to cases which fall within the precautionary addendum. In *Matter of Carll* (34 AD2d 793, *affd* 27 NY2d 917), this court held in a case where the will was executed in 1902 and the testator died in 1904, that the *Park-Silberman* presumption did not apply because the precautionary addendum did. Therefore, the adopted child of the deceased income beneficiary of the testamentary trust created by the will at issue in that case could not inherit under the will. The court, citing *Matter of Rockefeller (Hubbard)* (12 NY2d 124, 134, *supra),* held that an adopted child could inherit only if it affirmatively appeared from the context of the will or from extrinsic evidence that the testator intended to include adopted children. Since there was no expression in the will or extrinsic evidence indicating that the testator intended that adopted children could inherit under the will, the adopted child was unable to inherit. The

court distinguished *Matter of Silberman (supra)*, and a prior case, *Matter of Nichol* (32 AD2d 541), because in those cases both natural and adopted children (of the same generation) were present, which negated the applicability of the precautionary addendum. The Court of Appeals affirmed in *Carll* on the opinion of this court *(Matter of Carll*, 27 NY2d 917, *supra)*. Similarly, in *Matter of Brooks* (39 AD2d 942, *affd without opn* 32 NY2d 752), this court held that where 1 of 4 surviving children of the testator died leaving only an adopted son, the precautionary addendum applied because inheritance by the adopted child would have cut off the rights of remaindermen. Notably, the testamentary trust created in *Brooks* contained a power of appointment to each surviving child in favor of that child's issue. Nisi prius courts are also in conflict as to whether the *Park-Silberman* presumption is applicable where the precautionary addendum applies *(see, Matter of Lawrence*, 86 Misc 2d 579, 593, *supra*, and cases cited therein).

The courts, however, have continued to attempt to avoid the precautionary addendum by carving out exceptions. Thus, it has been held that where a will contained a testamentary power of appointment which permits the donee of the power to appoint the property to persons outside of the testator's bloodline, the precautionary addendum did not apply because the adoption was not the only event that could defeat the rights of the contingent remaindermen to take under the will. In *Matter of Charles* (200 Misc 452, *affd* 279 App Div 741, *affd* 304 NY 776, *supra)*, it was held that an adopted child could inherit under the testator's will because the testator granted the adoptive parent a testamentary power of appointment which could be exercised in favor of her children, the issue of any of her deceased children, her husband, and her two brothers or their issue in any manner or proportion. Initially, the court observed that the precautionary addendum is an exception to the broad pattern of remedial legislation with regard to the rights of adoptive children to inherit *(Matter of Charles, supra*, at pp 460-461), and that this exception "must be strictly construed in order that the major policy underlying [the] legislation itself is not defeated" *(Matter of Charles, supra*, at p 461). The court then held that because the adoptive parent could have appointed the trust property to her husband or anyone else in the group specified in the power of appointment, the donee could have defeated the rights of the remaindermen by merely exercising the power of appointment at her whim, and thus, the precautionary addendum did not

apply. Similarly, in *Matter of Snowden* (31 NY2d 322), the court held that where the testator gave the beneficiary of the will a general power of appointment, the adopted children of one of the sons of the beneficiary could inherit under the will. The fact that the testator granted a general testamentary power of appointment evidenced an intent on the part of the testator that his property could be transferred to individuals outside of his bloodline, and thus, the exercise of the power would cut off the rights of the remaindermen regardless of the adoption. The court cited *Matter of Charles (supra)*, as authority because the power of appointment in that case permitted the donee of the power to appoint the property out of the testator's bloodline, to wit, to her husband. The court in *Matter of Snowden (supra,* at p 327) noted that the precautionary addendum was merely designed to prevent " 'the perpetration of fraud on the rights of remaindermen "through an adoption for the very purpose of cutting out a remainder" ' " (quoting from *Matter of Upjohn,* 304 NY 366, 378, quoting from *Matter of Walter,* 270 NY 201, 206). The court further found it difficult to believe that the testator, by permitting appointment of his property out of his bloodline, did not contemplate that adopted children could inherit pursuant to the terms of the will. The court distinguished *Matter of Carll* (34 AD2d 793, *supra)*, and *Matter of Washburn (supra)*, on the ground that the remainders in those cases were expressly limited to the testators' bloodlines and that the testators had not created any testamentary powers of appointment.

The conclusion to be drawn from this review of the case law is that the precautionary addendum applies where the presence of an adopted child may defeat the rights of remaindermen under the will, unless (1) the testator or testatrix knew of the adoption or expressly intended adopted children to inherit, (2) extrinsic evidence shows that the testator or testatrix had such an intention, (3) there is some disposition to a class which includes both natural and adopted children, or (4) the testator or testatrix granted a power of appointment which displayed a lack of concern that the property of the estate remain in his or her bloodline. In the instant case, the testator, Jonathan T. Gardiner, obviously had no knowledge of the adoption because he died over 40 years before his grandnephew Winthrop adopted Olney. No extrinsic evidence was presented that Jonathan intended to include adopted children among the persons who could inherit under his will, and there is no language in the will evidencing such an intent. The

property is not bequeathed to a class including both natural and adoptive children. Finally, although the testator granted a testamentary power of appointment to the income beneficiary of the testamentary trust, his grandnephew Winthrop, that power was limited to persons within Jonathan's bloodline, to wit, "to [a] male relative of mine bearing the name Gardiner". The power was not general in nature, as in *Matter of Snowden (supra)*, and could not be exercised to a limited group of persons outside of the testator's bloodline, as in *Matter of Charles (supra)*. Hence, the Surrogate erred in holding that the precautionary addendum did not apply because the will contained a testamentary power of appointment *(see, Matter of Brooks, supra* [in which the powers of appointment granted to each of the decedent's four surviving children were limited to persons in the testator's bloodline, and did not constitute an affirmative indication that the testator intended to include adopted children among the persons who could inherit under his will]).

Nevertheless, we hold that Olney Mairs Gardiner may inherit under the will by virtue of the fact that Winthrop Gardiner, Jr., exercised the testamentary power of appointment in his favor. Under the law in effect both at the time of the testator's death (Domestic Relations Law former § 114, as amended by L 1931, ch 562, § 7), and as of the date that Olney's right to inherit under the will vested, to wit, upon the death of Winthrop Gardiner, Jr., in 1980 (Domestic Relations Law § 117 [2]), the fact that Olney was adopted did not preclude him from inheriting through his natural relatives.

Pursuant to Domestic Relations Law former § 114 (L 1931, ch 562, § 7), which was in effect when the testator died in 1933, the adopted child's "rights of inheritance and succession from his natural parents remain unaffected by such adoption". The adopted child could inherit from his natural relatives either by will or intestate succession *(see, Matter of Adler, 202 Misc 1100; Matter of Landers, 100 Misc 635; Legislation, New York's Law of Estates and Distribution: The New Status of the Adopted Child, 38 St. John's L Rev 380, 382).*

Present Domestic Relations Law § 117 (1) terminates the rights of an adoptive child to inheritance and succession from and through his natural parents upon the making of the order of adoption. However, Domestic Relations Law § 117 (2) further defines the effect of adoption on the right of the adopted child to inherit from and through his or her natural parents, as follows: "This section shall apply only to the intestate

descent and distribution of real and personal property and shall not affect the right of any child to distribution of property under the will of his natural parents or their natural or adopted kindred whether such natural parent or kindred shall have died heretofore or shall die hereafter or under any inter vivos instrument heretofore or hereafter executed by such natural parent or his or her kindred."

The note of the Temporary State Commission on Modernization, Revision and Simplification of the Law and Estates (1965 Legis Doc No. 19, at 20; see, L 1966, ch 14), explains the amendment: "This act is also intended to provide specifically that it does not affect any interest an adopted child might have under the will or *inter vivos* instrument *of any member of his natural family,* whether made before or after March 1, 1964" (emphasis added). Thus, by virtue of both Domestic Relations Law former § 114 (L 1931, ch 562, § 7), and Domestic Relations Law § 117 (2), Olney may inherit due to the exercise of the testamentary power of appointment in his favor by Winthrop Gardiner, Jr. Olney is the natural son of Isabelle Gardiner Mairs, the grandniece of the testator, Jonathan T. Gardiner. Although Olney's adoption by Winthrop in 1974 terminated Olney's parent-child relationship with his natural parents and thus terminated his right to inherit from them through intestate succession, the adoption did not terminate his right to inherit under the will of any of his natural relatives. Since Olney, for purposes of inheritance, was a natural male relative of Jonathan T. Gardiner, and since he changed his last name to Gardiner in 1974, by virtue of Domestic Relations Law § 117 (2) Olney may inherit pursuant to the power of appointment exercised by Winthrop.

The Court of Appeals has recently addressed the issue of inheritance by an adopted child from and through his natural parents after adoption in light of Domestic Relations Law § 117 (2). In *Matter of Best* (66 NY2d 151), the court was faced with the question of whether a child born out of wedlock and adopted out of his biological family at birth, was entitled to inherit under the will of Jessie C. Best. The will of the decedent established a residuary trust for the benefit of his daughter, which, upon her death, was to be divided " 'into as many shares or parts as there shall be * * * issue [of the daughter]' " *(Matter of Best, supra,* at p 153). The divided portions were to be held in trust during the life of one of the daughter's issue, and the remainder paid to the surviving descendants in a manner consistent with the rule against

perpetuities. The court (per Titone, J.), held that although the term "issue" is presumed to include children born both in and out of wedlock, the adopted child in that case, who was adopted out of his biological family shortly after his birth and had full inheritance rights through his adoptive family (EPTL 1-2.10; Domestic Relations Law § 117), could not inherit through his natural parents. The court refused, in effect, to give the adopted child inheritance rights as the issue of both his biological and his adoptive parents.

The court cited important policy considerations in support of its determination that class gifts in a will should not be construed to include a child adopted out of the biological family, such as the clear legislative intent to sever the child from the biological family tree and engraft the child upon new parentage (Matter of Best, supra, at p 155, citing Matter of Cook, 187 NY 253, 260; Matter of "Wood" v "Howe", 15 Misc 2d 1048, 1050). To recognize the right of a child who was born out of wedlock and adopted out of the family, to inherit class gifts from biological kindred "would be inconsistent with the child's complete assimilation into the adoptive family" (Matter of Best, supra, at p 155). Other policy considerations enumerated by the court included the need for confidentiality of adoption records (Matter of Best, supra, at pp 155-156), and the need for stability of real property titles as well as property rights passing under Surrogate's Court decrees (Matter of Best, supra, at p 156). The court concluded that Domestic Relations Law § 117 (2) does not mandate that the child adopted out of the family should receive a gift by implication. "Only if a child adopted out of the family is specifically named in a biological ancestor's will, or [if] the gift is expressly made to issue including those adopted out of the family, can the child take" (Matter of Best, supra, at p 156). Critically, however, the court specifically declined to decide whether the result would be the same if the child was not adopted out of the family. In this regard, the court stated (Matter of Best, supra, at p 155, n 1): "Different considerations might apply in hybrid cases, such as where a child is adopted by two descendants in some degree from a biological parent or parents or by one such person and a spouse who is a total stranger to the family. That question is not before us and we express no opinion on it".

The result reached in the present case is not inconsistent with the result and reasoning in Matter of Best (supra), for the reason that the case at bar involves the adoption of a child

within the biological family (by the adoptive child's uncle), not out of the biological family, as in *Matter of Best (supra)*. Therefore, the policy considerations militating against providing a windfall for the adoptive child by prohibiting the child from inheriting from both his or her natural and adoptive families are not present in this case. Moreover, in the case at bar, where the precautionary addendum applies, preventing Olney, the adopted child, from inheriting under the will through his adoptive family because his adoption operates to defeat the rights of the remaindermen under the will, the effect of preventing children adopted within the biological family from inheriting class gifts would be to prevent any inheritance by the child. Otherwise stated, if the reasoning in *Matter of Best (supra)* were to be applied to adoptions of children within the biological family and if the precautionary addendum were to be applied to negate a legacy to such an adopted child, the child adopted within the biological family would not be able to inherit through his natural or adoptive families. It is not conceivable that the Legislature intended such a result when it enacted Domestic Relations Law § 117 (2) in its present form.

Accordingly, the order and partial decree (one paper) appealed from should be modified, on the law, without costs or disbursements, by deleting from the second decretal paragraph thereof the words "and the oldest living son of said Winthrop Gardiner, Jr." and substituting therefor the words "as the donee under the power of appointment set forth in said Article FOURTH of the will".

LAZER, J. P., THOMPSON and RUBIN, JJ., concur.

Order and partial decree (one paper) of the Surrogate's Court, Suffolk County, dated May 7, 1984, modified, on the law, by deleting from the second decretal paragraph thereof the words "and the oldest living son of said Winthrop Gardiner, Jr.", and substituting therefor the words "as the donee under the power of appointment set forth in said Article FOURTH of the will". As so modified, order and partial decree affirmed, without costs or disbursements.

Justice Lazer has been substituted for former Justice, now Judge Titone *(see,* Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).