In the Matter of the Accounting by FLEET BANK, Respondent, as Trustee of the Trust for the Benefit of BARBARA W. PIEL, Now Deceased, Under Indenture with FLORENCE S. WOODWARD, Dated December 28, 1926. ELIZABETH McNABB, Intervenor-Appellant; LILA PIEL-OLLMANN et al., Respondents; EUGENE P. LaBUE, ESQ., Guardian ad Litem. (Appeal No. 1.) [831 NYS2d 609]—

Appeal from a decree of the Surrogate's Court, Monroe County (Edmund A. Calvaruso, S.), entered December 14, 2005. The decree, insofar as appealed from, settled the final account of a trust established in 1926.

It is hereby ordered that the decree so appealed from be and

the same hereby is unanimously reversed on the law without costs and the matter is remitted to Surrogate's Court, Monroe County, for further proceedings in accordance with the following memorandum: In appeal No. 1, Elizabeth McNabb, the intervenor herein, appeals from a decree that settled the final account of a trust established by Florence S. Woodward (grantor) in 1926 for the benefit of her daughter, Barbara W. Piel, and in appeal No. 2, Elizabeth appeals from a decree that settled the final account of a trust established by the grantor in 1963, also for the benefit of Barbara. The 1926 trust provided, in relevant part, for distribution of income from the trust to "Barbara Woodward" during her lifetime and for distribution of the principal in equal shares to her "descendants" after her death. The 1963 trust provided for distribution of income from the trust to "Barbara W. Piel" during her lifetime and, upon her death, the principal was to be divided in equal shares, one "for each then living child of hers." The income of each child's share was to be distributed to the child during his or her lifetime, and the principal of that share was to be distributed at the time of the child's death to the child's "living issue" per stirpes. Barbara died on July 2, 2003, thereby triggering the distribution provisions of both trusts.

Elizabeth was born out-of-wedlock to Barbara in 1955 and was adopted out shortly after her birth. Barbara thereafter married and had two more daughters, respondents Stobie Piel and Lila Piel-Ollmann, who were born in 1959 and 1961, respectively. We agree with Elizabeth that the Surrogate erred in approving the final accounts, both of which exclude her from sharing in the proceeds of the trusts. As of September 8, 2004, the aggregate principal balance of the trusts was over $9.5 million.

The Surrogate erred in relying upon *Matter of Best* (66 NY2d 151 [1985], *rearg denied* 66 NY2d 1036 [1985], *cert denied sub nom. McCollum v Reid*, 475 US 1083 [1986]) in determining that, because Elizabeth was adopted out of the family, she is not a "descendant" or "child" of Barbara and is therefore not included within the class of intended remainderpersons or beneficiaries of the trusts. Domestic Relations Law § 117 was amended in 1963, effective in 1964, to limit the right of an adopted-out child to inherit from and through the adoptive parents (*see* § 117 [1], [2]), rather than permitting the adopted-out child to inherit from and through both the biological and adoptive parents (*see* former § 117). The statute as amended implemented the intent of the Legislature "that the adopted child be severed from the biological family tree and be engrafted

upon new parentage" (*Best*, 66 NY2d at 155). The statute was further amended in 1966 to clarify that the 1964 amendments limited only the intestacy rights of the adopted-out child, and not the right of the child to take pursuant to a will or an inter vivos trust (*see* NY Cons Laws Serv, Book 8, Domestic Relations Law § 117, Note at 478). The trusts at issue herein were executed when Domestic Relations Law former § 117 was in effect, while *Matter of Best* was decided in 1985 and concerned a will executed in 1973 (*see Best*, 116 Misc 2d 365 [1982]), well after the effective dates of the amendments to Domestic Relations Law § 117 in 1964 and 1966. We thus conclude that the policy considerations and reasoning set forth in *Matter of Best* do not apply to this case.

It is axiomatic that the intent of the grantor controls in construing a trust instrument and that such intent generally must be ascertained from the four corners of the instrument (*see generally Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256, 267 [1990]; *Sankel v Spector*, 33 AD3d 167, 171 [2006]). However, the "[u]se of the term issue in a dispositive instrument has always been viewed as ambiguous, with its meaning depending on the intent of the decedent as derived from the content of the entire [instrument]" (*Best*, 66 NY2d at 154), and so too, here, we are unable to discern from the content of the trust instruments whether the grantor intended to include Elizabeth as a "descendant" or "child" (*see generally Matter of Cord*, 58 NY2d 539, 544 [1983], *rearg denied* 60 NY2d 586 [1983]). Nor can the grantor's intent be ascertained by considering "the facts and circumstances surrounding the execution" of the trust instrument (*Matter of Leventritt*, 92 Misc 2d 598, 603 [1977]). We note that, although Elizabeth contends that she was known to Barbara and is known to Barbara's marital children, there is nothing in the record indicating whether the grantor knew Elizabeth or, indeed, whether she was aware that Elizabeth had been born and had been adopted.

Also relevant in determining the intent of the grantor is the law in effect when the trust was executed (*see Matter of Vought*, 29 AD2d 97, 102 [1967], *appeal dismissed* 21 NY2d 957 [1968]; *Matter of Kellogg*, 36 Misc 2d 1064, 1065 [1962]). The grantor is presumed to have known the law when she executed the trusts (*see generally Cord*, 58 NY2d at 545; *Leventritt*, 92 Misc 2d at 603) and, construing the terms of the trusts pursuant to the law then in effect (*see* Domestic Relations Law § 117 [3]; *see generally Matter of Gardiner*, 113 AD2d 651, 662 [1985], *affd* 69 NY2d 66 [1986]), we conclude that the status of Elizabeth as an adopted-out child does not exclude her from the class of

Barbara's descendants or children (*cf. Best*, 66 NY2d at 154-155).

We reject petitioner's contention that, regardless of the status of Elizabeth as an adopted-out child, her status as a nonmarital child prevents her inclusion in the class of Barbara's descendants or children. We recognize that, at the time the trusts were executed, the laws with respect to descent and distribution gave preference to the legal rights of marital or "lawful" children over the rights of nonmarital children, and the burden was on the nonmarital child to prove that the testator or grantor intended to include the nonmarital child in the class of descendants, children or issue (*see Matter of Hoffman*, 53 AD2d 55, 57 [1976]). We also recognize "the ancient concept that [a nonmarital] child was indeed . . . a child of nobody, . . . without legal status" (*id.*). We nevertheless conclude that the status of Elizabeth as a nonmarital child does not prevent her inclusion in the class of Barbara's descendants or children. Former Decedent Estate Law § 83 (13), which in 1926 was section 89, was in effect when the trusts at issue herein were executed, and that statute recognized the status of a nonmarital child as the descendant of his or her mother, albeit through the provision that such child shall inherit only in the event that no "lawful issue" existed. In addition, Domestic Relations Law former § 117 specifically provided that adopted-out children may inherit from and through their biological as well as their adoptive parents. We therefore conclude that, because the laws of devise and distribution in effect when the trusts herein were executed recognized that nonmarital children were included, at least to some extent, in the class of descendants or children of their parents, Elizabeth is not excluded from the class of Barbara's descendants and children. Thus, in each appeal, we reverse the decree and remit the matter to Surrogate's Court for further proceedings consistent with this decision. Present—Scudder, P.J., Martoche, Smith, Peradotto and Pine, JJ.