[843 NE2d 140, 809 NYS2d 500]

In the Matter of the Estate of MILDRED B. MURPHY, Deceased. BONNIE GUSTIN et al., as Executors of MILDRED B. MURPHY, Deceased, Petitioners; EVELYN BECKMAN, Respondent, and CONNIE MORRAL et al., Appellants.

Argued September 15, 2005; decided October 27, 2005

## POINTS OF COUNSEL

*Devorsetz Stinziano Gilberti Heintz & Smith, P.C.,* Syracuse (*Kevin G. Roe* of counsel), and *Welch & Zink,* Corning, for appellants. The testatrix's dispositions to her adopted-out child by name were dispositions to her issue and are subject to the anti-lapse provisions of the EPTL; adopted-out children are considered "strangers" to their natural families under the Domestic Relations Law only for the limited purpose of construing a testamentary disposition to a class. (*Matter of Robert Paul P.,* 63 NY2d 233; *Matter of Best,* 66 NY2d 151; *Matter of Seaman,* 78 NY2d 451; *Matter of Landers,* 100 Misc 635.)

*Kenneth F. Joyce,* Bath, *William B. Joint* and *Sayles & Evans,* Elmira (*Clover M. Drinkwater* of counsel), for respondent. The anti-lapse statute does not cause a testatrix's bequest to her adopted-out son, identified in the will by name but not by relationship, to pass to his issue where the child was adopted by strangers and the testatrix did not expressly include his issue. (*Matter of Best,* 66 NY2d 151; *Matter of Fabbri,* 2 NY2d 236; *Matter of Sawyer,* 4 AD3d 800; *Matter of Seaman,* 78 NY2d 451.)

## OPINION OF THE COURT

ROSENBLATT, J.

In her will, the testator (birth mother) bequeathed real and personal property to her adopted-out son. Because she outlived him, we must decide whether the bequests lapsed or pass to his issue under New York's anti-lapse statute (EPTL 3-3.3).

In 1924, the testator, Mildred B. Murphy, gave birth to a son, Arthur. Arthur went to live with Jim E. and Mae Manning and was known throughout his childhood as Clair Willard Manning. The Mannings officially adopted him in 1944, when he was 19. Mildred had no other children. Clair and his birth mother reestablished their relationship some time after World War II.

In 1998, Mildred executed the will that is the subject of this suit. In the will, Mildred left her Keuka Lake cottage to Clair, along with $8,000 and half of the residuary estate.[1] In addition to her bequests to Clair, she willed cash gifts to two of Clair's children. The will also provided that the remaining half of the residuary estate go to her sister-in-law, Evelyn Beckman. Clair died on March 4, 2001, survived by four children. Mildred died 11 months later, on February 14, 2002.

After the will was admitted to probate, the executors brought this construction proceeding to determine the fate of the bequests to Clair. Beckman asserts that the bequests lapsed and should become part of the residuary estate. She argues that Domestic Relations Law § 117 (2) mandates that adopted-out children be treated as strangers for the purpose of construing the will of a birth relative and that the bequests were not saved by EPTL 3-3.3. The Surrogate agreed, ruling that the gifts to Clair lapsed in their entirety and passed to Beckman with the whole of the residuary estate. The Appellate Division affirmed the decree. We granted leave and now reverse.

The appeal before us involves the interplay of EPTL 3-3.3 and Domestic Relations Law § 117 (2). EPTL 3-3.3, the anti-lapse statute, provides that when a bequest is made to the issue or siblings of the testator, and the beneficiary predeceases the testator, the gift does not lapse but vests in the beneficiary's surviving issue. The anti-lapse statute was designed "to abrogate . . . the common-law rule that a devise or legacy to [a predeceased child] lapsed and to substitute the children of the deceased child for the primary object of the testator's bounty" (*Pimel v Betjemann*, 183 NY 194, 199 [1905]). The harshness of that common-law rule, more often than not, defeated the testator's intention (*id.* at 200). We must determine whether the testator's adopted-out child, expressly named in her will, qualifies as her issue within the meaning of EPTL 3-3.3. In simplest terms, the issue is "issue."

In 1986, the Legislature revised subdivision (b) of EPTL 3-3.3, along with Domestic Relations Law § 117, defining "issue"—for

---

1. The relevant provision reads:
   "Fifth. I give, devise and bequeath to CLAIR W. MANNING of Wellsboro, PA the real property owned by me on Keuka Lake, located at 132 and 134 West Lake Road, consisting of a cottage, extra lot and boathouse together with all of the contents and property located therein and thereon. I further give and bequeath to CLAIR W. MANNING the sum of Eight thousand dollars ($8,000.00)."

the purpose of triggering the anti-lapse provision—to "include adopted children and their issue to the extent they would be included in a disposition to 'issue'" under EPTL 2-1.3 and Domestic Relations Law § 117 (2). Domestic Relations Law § 117 (2) (a) provides:

> "Except as hereinafter stated, after the making of an order of adoption, adopted children and their issue thereafter are strangers to any birth relatives for the purpose of the interpretation or construction of a disposition in any instrument, whether executed before or after the order of adoption, which does not express a contrary intention or *does not expressly include the individual by name* or by some classification not based on a parent-child or family relationship." (Emphasis added.)

The Manning children contend that by naming their father— the adopted-out child—as a beneficiary under her will, Mildred altered his status from "stranger" to "issue" for the purposes of the anti-lapse statute with respect to that gift. Because much of Domestic Relations Law § 117 (2) (a) would lose meaning if we were to rule otherwise, we agree with this contention and reverse the Appellate Division order.

Until 1985, when we decided *Matter of Best* (66 NY2d 151 [1985]), it was not clear that adoption had any effect on the rights of adopted-out children to take under the testamentary instruments of their birth relatives, though the Legislature had limited the rights of such children in intestacy.[2] In *Best*, we held that an adopted-out child will not take in a class gift from a birth relative unless that child is "specifically named in a

---

2. Adoption did not exist at common law, and New York did not authorize it by statute until 1873 (L 1873, ch 830). That first adoption statute explicitly excluded inheritance from among the rights acquired or lost through adoptive relationships. Fourteen years later, the Legislature amended the statute to allow adopted children to inherit through both birth and adoptive lines (L 1887, ch 703). The matter stood that way through the enactment of the Domestic Relations Law and several versions of what, in 1961, became Domestic Relations Law § 117 (L 1961, ch 147). It was not until 1963 that section 117 was amended to preclude adopted-out children from inheriting through their birth relationships, except in cases of adoption by a stepparent. A further amendment in 1966 clarified section 117's scope by expressly limiting the inheritance preclusion to intestate descent and distribution. (*See generally Matter of Seaman*, 78 NY2d 451, 455-458 [1991]; Recommendation of Law Rev Commn to 1986 Legislature, Bill Jacket, L 1986, ch 408, at 10; French, Note, *When Blood Isn't Thicker than Water: The Inheritance Rights of Adopted-Out Children in New York*, 53 Brook L Rev 1007, 1011-1012 [1988].)

biological ancestor's will, or the gift is expressly made to issue including those adopted out of the family" (*id.* at 156).

The Legislature has amended section 117 several times since. In 1986, it adopted a modified version of the *Best* rule (L 1986, ch 408, § 1). Among the modifications, it allowed children adopted by certain other relatives within the birth family to take through class gifts under both lines. The Law Revision Commission had recommended that, where these intrafamily adoption rules did not apply, adopted-out children should be excluded from membership in "a class of persons based upon natural relationship . . . unless the will or instrument expresses a contrary intention."[3] The Legislature employed this language and expanded upon it by providing that such children are strangers to a birth relative's will if it "does not express a contrary intention or does not include the individual by name." (L 1986, ch 408, § 1.) The 1987 revision added a parallel provision to section 117 (1) for intrafamily adoption in intestacy situations, although, of course, without provision for the contrary intention of the decedent (L 1987, ch 499).

We based our decision in *Best* on three major policy considerations. We emphasized the importance of maintaining the confidentiality of adoption records, preserving the stability of real property titles and assimilating the adopted child into the adoptive family (66 NY2d at 155-156). These concerns are no less substantial today than they were 20 years ago, but we note that none of them is implicated in this case. We rely here on statutory construction.

Beckman argues, and the dissent agrees, that the language of section 117 supports her position. Because section 117 specifically states that "adopted children *and their issue*" are strangers to the will unless one of the conditions is met, the "individual" to be included by name (her argument goes) is any person claiming a right under the will as issue. Beckman contends that, because Clair (although named) had died, his children may not take because *they* are not individually named.

This argument would be plausible only if we read section 117 in isolation, devoid of its relationship to EPTL 3-3.3. Indeed, as the Manning children argue, if we were to read the section as Beckman and the dissent advocate, the testator's expressed contrary intention or naming of the adopted-out child would have

---

**3.** Recommendation of Law Rev Commn to 1986 Legislature, at 37, Bill Jacket, L 1986, ch 408, at 46.

no practical or legal effect other than to allow the named individual to take the bequest. The named adopted-out child would then be in the same position as any other named nonrelative in any will. Surely the Legislature did not enact section 117 (2) (a) merely to state the obvious: that someone named in a will may inherit.

Moreover, the provisions in section 117 (1) and section 117 (2) are parallel insofar as possible, considering the inevitable differences between intestate distribution and probate of a will. This was a primary consideration in the 1987 revision, which added provisions for intestacy similar to those promulgated the year before for testamentary instruments (*Matter of Seaman*, 78 NY2d 451, 459 [1991]). In *Matter of Seaman* we held, concerning the treatment of intrafamily adoptions in section 117 (1):

> "The issue's right to inherit from the natural family was severed, however, in 1963 when the Legislature severed the adopted child's right to so inherit. From this, it follows that when the Legislature restored the right of the adopted-out child to inherit from the natural family under the circumstances specified in Domestic Relations Law § 117 (1) (e), it also restored the right of the adopted-out child's issue to do so" (*id.* at 456 [citations omitted]).

As a result, we concluded that it was unnecessary for the Legislature to refer expressly to the adopted-out child's "issue" when enacting section 117 (1) (e). The statute implicitly restored inheritance rights to the issue of the adopted-out child when it restored them to the child (*id.* at 457).

The dissenting opinion reads EPTL 3-3.3's reference to section 117 (2) as a broad reference to the classes of intrafamily adoptions that preserve birth inheritance rights, rather than as a reference to section 117 (2) (a) (dissenting op at 48). That interpretation is untenable because section 117 (2) is the subdivision of section 117 that covers adopted-out children in the testacy context. A will remains a prerequisite for anti-lapse, and section 117 (2) is the only subdivision of section 117 to which the anti-lapse statute could be referring. Our dissenting colleague contends that, by allowing testators to invoke the anti-lapse statute for their adopted-out children, our reading "does not treat the issue of adopted-out children comparably under the laws of intestacy and testacy" (dissenting op at 47). The dissenter's argument, however, fails to note that section 117 (2) (a) is the very provision that marks the necessary differences be-

tween the two contexts. If there could be a perfect parallel, there would be no need for separate subdivisions.

The question before us is analogous to the one answered in *Seaman*, and it is *not* one of the few instances that section 117 requires us to treat differently between testacy and intestacy. To follow the legislative parallel between testamentary law and the law of intestacy as much as the necessary differences allow, we must treat the restoration of Clair's status as issue as the restoration of that status to his children as well.

We therefore conclude that, under Domestic Relations Law § 117 (2) (a), adopted children and their issue are ordinarily "strangers" to their birth relatives, and thus are excluded from class gifts. They are not "strangers" when the bequest is to a named adopted-out child—here, to Clair Manning. If "stranger" or the three "nonstranger" conditions of section 117 (2) are to have any meaning, it must mean that biological children who are not "strangers" are "issue" under the anti-lapse statute. We therefore conclude that when Mildred Murphy named her adopted-out son Clair as a beneficiary of her will, she triggered the condition in section 117 (2) that made him a nonstranger, and thus her issue, with respect to the relevant bequest. His children, therefore, are entitled to the benefit of the anti-lapse statute.

Accordingly, the order of the Appellate Division should be reversed, with costs payable out of the estate, and the matter remitted to Surrogate's Court for further proceedings in accordance with this opinion.

READ, J. (dissenting). While the majority's interpretation of the "interplay" between Domestic Relations Law § 117 (2) (a) and EPTL 3-3.3 is certainly not fanciful, it strikes me as implausible in light of relevant statutory language and history. Accordingly, I respectfully dissent.

Prior to its amendment in 1986, subdivision (1) of section 117 of the Domestic Relations Law provided that an adopted person could not inherit in intestacy from or through his biological family, except where the biological parent remarried and consented to adoption by the spouse. Subdivision (2) of section 117, however, specified that

"[t]his section [117] shall apply only to the intestate descent and distribution of real and personal property and shall not affect the right of any child to

distribution of property under the will of his natural parents or their natural or adopted kindred . . . or under any inter vivos instrument."

In *Matter of Best* (116 Misc 2d 365 [Sur Ct, Westchester County 1982]), the Surrogate was faced with the question whether, in light of subdivision (2), a child adopted out of the family by a nonrelative could inherit as a member of a class of beneficiaries (i.e., "issue") identified in his biological grandmother's will. The Surrogate concluded that he could. Recognizing the jurisdictional problems presented by his interpretation of section 117 (2) as well as the risk to the confidentiality of adoption proceedings, he urged legislative study and amendment to

"limit the adopted-out child's interest in decedents' estates to the bloodline of his adoptive parents except in those instances when a will of a biological kindred discloses in clear language an intention to distribute a portion of the estate to the adopted-out child. To continue the existing statute without amendment will give rise to litigation, delays in the settlement of estates and the distribution of property to persons not only unknown to a testator but to unintended beneficiaries" (*id.* at 375).

In 1984, the Law Revision Commission drafted and recommended adoption of a bill to cure the so-called *Best* problem by creating a statutory default rule for construing gifts made to a class to which an adopted-out child belonged in his biological relationship prior to adoption (*see* 1984 NY Senate-Assembly Bill S 8325, A 10131). This bill amended section 117 of the Domestic Relations Law so as to permit an adopted-out child to inherit under either intestacy (subdivision [1]) or a will or inter vivos instrument (subdivision [2]) from biological kindred as he would have prior to adoption, but only if adopted by a stepparent, a birth grandparent or a descendant of a birth grandparent. The bill concomitantly amended subdivision (b) of EPTL 3-3.3, the anti-lapse statute, so that "issue," "surviving issue" and "issue surviving" included adopted-out children "to the extent they may inherit under the provisions of section one hundred seventeen of the domestic relations law" (that is, from a stepparent, a birth grandparent or the descendant of a birth grandparent under the terms of the bill). In short, the bill created a symmetrical standard that gave adopted-out children the right to inherit in both intestacy and testacy from identical and limited categories of close kindred.

Although passed by both houses of the Legislature, the 1984 bill ultimately foundered on the shoals of strong opposition from the New York State Bar Association's Trust and Estates Law Section, which had developed a competing proposal (*see* Proposed Legislation to amend Domestic Relations Law ["DRL"] § 117 and Estates, Powers and Trusts Law ["EPTL"] §§ 2-1.3 and 3-3.3, Bill Jacket, Veto 106 of 1984, at 50). Governor Mario M. Cuomo vetoed the bill, noting ambiguities and "the substantial lack of consensus within the legal community," which argued "for further deliberate review" (Governor's Veto Mem 106, 1984 NY Legis Ann, at 403).

In 1985, we reversed the Appellate Division's order in *Best* and remitted to Surrogate's Court, concluding that "[o]nly if a child adopted out of the family is specifically named in a biological ancestor's will, or the gift is expressly made to issue including those adopted out of the family, can the child take" (*Matter of Best*, 66 NY2d 151, 156 [1985]). We left open the question of the "hybrid cases," where a child was adopted by a stepparent or a member of the biological family and different policy considerations might therefore apply (*id.* at 155 n 1).

In 1986, the Law Revision Commission drafted and recommended adoption of another version of a bill related to the *Best* dilemma (*see* 1986 NY Senate-Assembly Bill S 8366, A 10462).[1] This bill recast former subdivision (2) of section 117 as paragraph (h) of subdivision (1),[2] and added a new subdivision (2) to govern dispositions under wills and inter vivos instruments. The new subdivision (2) read in relevant part as follows:

> "(a) As to the wills of persons dying after the thirty-first day of August, nineteen hundred eighty-six, or to inter vivos instruments executed after such date, a designation of a class of persons based upon natural relationship shall, unless the will or instrument expresses a contrary intention, be deemed to include

---

**1.** The Law Revision Commission's 1985 bill (*see* 1985 NY Senate-Assembly Bill S 5535, A 7455) on this topic, like the vetoed 1984 bill, applied both to intestacy and to class gifts under testamentary and inter vivos instruments. This bill was never acted on in either house.

**2.** This was the language that caused the lower courts in *Best* to conclude that the rights of an adopted-out child were terminated only with respect to intestate descent and distribution, and not under a will or inter vivos instrument. Most of this language in former subdivision (2)/new subdivision (1) (h) was deleted in the bill subsequently enacted as chapter 408 of the Laws of 1986.

an adoptive child who was a member of such class prior to adoption only if:

"(1) an adoptive parent (i) is married to the child's natural parent, (ii) is the child's natural grandparent, or (iii) is a descendent of such grandparent, and

"(2) the testator or creator is the child's natural grandparent or a descendent of such grandparent."

The 1986 bill thus limited an adopted-out child's rights to inherit from biological kindred under a will or inter vivos instrument to the identical limited categories of close biological relatives as was the case in the vetoed 1984 bill (i.e., a stepparent, a birth grandparent or a descendent of a birth grandparent). The 1986 bill also amended subdivision (b) of EPTL 3-3.3 to provide that "issue," "surviving issue" and "issue surviving" included adopted-out children "to the extent they may inherit under the provisions of section one hundred seventeen of the domestic relations law."

This time around, the Law Revision Commission and the State Bar Committee on Estate and Trust Administration struck a deal. The State Bar Committee endorsed the 1986 bill so long as certain "technical changes" were made (*see* Legislation Report, Bill Jacket, L 1986, ch 408, at 65). As relevant to this case, one of those technical changes called for a new subdivision (2) (a) of section 117 and the relettering of proposed subdivision (2) (a) as (2) (b). This new subdivision (2) (a), modeled on a provision of the Uniform Adoption Act, specified that

"[e]xcept as hereinafter stated, after the making of an order of adoption, adopted children and their issue thereafter are strangers to any natural relatives for the purpose of the interpretation or construction of a disposition in any instrument, whether executed before or after the order of adoption, which does not express a contrary intention or does not expressly include the individual by name or by some classification not based on a parent-child or family relationship."[3]

---

**3.** Section 14 of the Uniform Adoption Act provides that adoption decrees generally

"terminate all legal relationships between the adopted individual and his relatives, including his natural parents, so that the adopted individual thereafter is *a stranger to his former relatives*

Chapter 408 of the Laws of 1986 reflected the technical changes required by the State Bar Committee as the price of its endorsement, including the new section 117 (2) (a).

Thus, in the 1984 bill and in the initial version of the 1986 bill, subdivision (2) (a) of section 117 consisted *only* of what was subsequently relettered subdivision (2) (b) in the bill enacted as chapter 408—the provision confining an adopted-out child's rights to inherit from biological kindred under a will or inter vivos instrument to specified categories of close relatives. There is nothing in the legislative history of chapter 408 to suggest that the Legislature intended the addition of the refashioned subdivision (2) (a) to accomplish anything other than what the State Bar Committee envisioned; namely, a technical, not a substantive change to the original bill. There is certainly no basis for concluding that this technical change caused EPTL 3-3.3, the anti-lapse statute, to bear on Domestic Relations Law § 117 (2) in the way advocated by Clair Manning's children and adopted by the majority. Under the majority's interpretation, however, by making a bequest to an adopted-out child by name, a testator restores the adopted-out child to his preadoption rights of inheritance as biological kindred with respect to that bequest. Thus, the child adopted out by strangers, merely by being named in a will, achieves inheritance rights on a par with the child adopted out by close kindred. A testator will have to express the contrary intention in order to avoid this result whenever making a bequest to an adopted-out child by name. This cuts against the grain of chapter 408, which presumes that the average testator would likely only intend for the issue of a child adopted out by specified close kindred to qualify as substituted takers under the anti-lapse statute.

Nor does section 117 (2) (a) lack meaning and effect unless interpreted in conjunction with EPTL 3-3.3 in the way suggested by the majority. It is under subdivision (2) (a) that the bequests to two of Clair Manning's four children pass. Under section 117 (2) (a), as issue of an adopted-out child they were made strangers to their birth grandmother for purposes of interpreting the dispositions in her will. Subdivision (2) (a), then, simply makes clear that notwithstanding this, these two

---

*for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments*, whether executed before or after the adoption is decreed, which *do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship*" (Uniform Adoption Act § 14 [a] [1] [emphasis added]).

grandchildren may take by name as would any other stranger. Further, testator could have, for example, provided in her will that she intended to make her bequests to "My child, Clair Manning, as though he had never been adopted"; or she could have directed that the adoption of Clair Manning was to be disregarded for purposes of construing the dispositions in her will. In either event, she would have "express[ed] a contrary intention" under subdivision (2) (a), thus contradicting the legislative presumption that adopted-out children and their issue are strangers to their biological relatives for purposes of inheritance, except as specified in subdivision (2) (b). But, of course, she did not do this. Finally, subdivision (2) (a) also preserves bequests to an adopted-out child as a member of some classification not based on the parent-child or family relationship; for example, testator might have made a bequest to the members of her Saturday afternoon bridge club. Assuming that Clair Manning was a member of this classification, the majority's interpretation creates some odd results. Presumably, this gift to him would not lapse if EPTL 3-3.3, in fact, saves gifts to an adopted-out child taking a bequest under the terms of Domestic Relations Law § 117 (2) (a). If the testator had made the bequest to "Clair Manning, John Doe and Jane Roe, with whom I have enjoyed playing bridge on Saturday afternoon for 25 years," and both Clair Manning and John Doe predeceased her, the bequest to Clair Manning clearly would not lapse under the majority's interpretation (because Clair Manning was named and because he was biological issue), but the bequest to John Doe would.

Additionally, the majority's interpretation of Domestic Relations Law § 117 (2) (a) ignores some of its language. Section 117 (2) (a), as relevant in this case, applies to "adopted children *and their issue*" unless *"the individual"* is included by name (emphasis added). The phrase "and their issue" is superfluous under the majority's reading of section 117 (2) (a), for the majority reads the word "individual" as synonymous with the phrase "adopted child[ ]." The majority's reading of section 117 (2) (a) also does not treat the issue of adopted-out children comparably under the laws of intestacy and testacy, the Legislature's avowed purpose when it amended Domestic Relations Law § 117 (1) in 1987 (*see generally*, Bill Jacket, L 1987, ch 499).

Finally, although this appeal turns on statutory interpretation, nothing on the face of testator's will indicates any intention to favor Clair Manning's four children over her Beckman

relatives. In the will's "Ninth" paragraph decedent makes 16 separate bequests to 13 named individuals and three churches, charities or societies. Only two of Clair Manning's four children are included in any of the 13 bequests to named individuals, one for $5,000 and the other for $3,000; at least four of these 13 bequests (and perhaps more—it is not apparent from the face of the will or otherwise from the record) are made to Beckman relatives, two for $10,000, the most of any of the individual bequests, and two for $5,000. The will's executors are Beckman relatives.

In sum, statutory language and legislative history belie the notion that Domestic Relations Law § 117 (2) (a) is dependent on EPTL 3-3.3 for its meaning and effect. Clair Manning's children should not take under section 117 (2) (a) except to the extent that two of them are the named beneficiaries of specific bequests; they should not take under EPTL 3-3.3 because their father was not adopted by any of the limited categories of close kindred specified in Domestic Relations Law § 117 (2) (b). Accordingly, I would affirm the order of the Appellate Division.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO and R.S. SMITH concur with Judge ROSENBLATT; Judge READ dissents and votes to affirm in a separate opinion.

Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and matter remitted to Surrogate's Court, Steuben County, for further proceedings in accordance with the opinion herein.