[884 NE2d 1040, 855 NYS2d 41]

In the Matter of the Accounting by FLEET BANK, as Trustee of the Trust for the Benefit of BARBARA W. PIEL, Now Deceased, under Indenture with FLORENCE S. WOODWARD, Dated December 28, 1926, Appellant. ELIZABETH MCNABB, Intervenor-Respondent; LILA PIEL-OLLMANN et al., Appellants. (And Another Proceeding.)

Argued February 6, 2008; decided March 13, 2008

## POINTS OF COUNSEL

*Harris Beach PLLC,* Pittsford (*A. Vincent Buzard, Edward D. Bloom* and *Gregory J. McDonald* of counsel), *Wakelin, Hallock & O'Donovan, LLP,* Portland, Maine (*David S. Wakelin* of counsel), and *Eugene P. LaBue,* Rochester, for appellants. I. The Appellate Division erroneously overruled this Court's decision in *Matter of Best* (66 NY2d 151 [1985]) by rejecting the single, universal rule of construction that this Court established regarding the rights of adopted-out children to share in class gifts under wills and trusts of biological ancestors. (*Matter of Cook,* 187 NY 253.) II. Section 117 of the Domestic Relations Law, which the Appellate Division relied upon, was determined by this Court in *Matter of Best* (66 NY2d 151 [1985]) to be irrelevant. (*Matter of Cook,* 187 NY 253; *Matter of Murphy,* 6 NY3d 36; *Matter of Adler,* 202 Misc 1100; *Matter of Landers,* 100 Misc 635; *Matter of Gourlay,* 173 Misc 930; *Matter of Monroe,* 132 Misc 279; *Matter of Gardiner,* 69 NY2d 66.) III. The Appellate Division's treatment of *Matter of Best* (66 NY2d 151 [1985]) as to instruments in effect prior to March 1, 1964 has broad negative policy implications for adoptions and the administration of trusts in New York.

*Boylan Law Office, LLP,* LeRoy (*Paul S. Boylan* and *Laurence C. Boylan* of counsel), for intervenor-respondent. I. The Appellate Division distinguished, but did not overrule, *Matter of Best* (66 NY2d 151 [1985]), correctly concluding that respondent is entitled to share in the trusts created by her grandmother. (*Matter of Landers,* 100 Misc 635; *Matter of Monroe,* 132 Misc 279; *Matter of Gourlay,* 173 Misc 930; *Matter of Adler,* 202 Misc 1100; *Matter of Cook,* 187 NY 253; *Matter of Robert Paul P.,* 63 NY2d 233; *Matter of Underhill,* 176 Misc 737; *Matter of Mulligan v*

*Murphy,* 14 NY2d 223; *Moore v Littel,* 41 NY 66.) II. The marital status of Elizabeth McNabb's mother does not adversely affect her right to participate in the two trusts created by her grandmother in 1926 and 1963. (*Levy v Louisiana,* 391 US 68; *Trimble v Gordon,* 430 US 762; *Shelley v Kraemer,* 334 US 1; *Matter of Hoffman,* 53 AD2d 55; *Matter of Gans,* 134 Misc 2d 426; *Reed v Campbell,* 476 US 852.)

## OPINION OF THE COURT

Chief Judge KAYE.

In *Matter of Best* (66 NY2d 151 [1985]), this Court relied on strong policy considerations to conclude that a child adopted out of the family by strangers does not presumptively share in a class gift to the biological parent's issue established in the biological grandmother's 1973 testamentary trust. This appeal presents the same scenario, but with class gifts created by 1926 and 1963 irrevocable trusts. Despite the time difference, we conclude that the policy considerations that were determinative in *Best* equally determine the case before us, and that the adopted-out child does not share in the trust proceeds.

### Background

Florence Woodward created two irrevocable trusts, one in 1926 and a second in 1963, for the lifetime benefit of her daughter, Barbara W. Piel, and upon her death the trusts directed the trustee (successor-in-interest Fleet Bank) to distribute the principal to Barbara's descendants. Specifically, the 1926 trust net income was to be paid "to her descendants, if any, in equal shares, per stirpes." The 1963 trust principal was to be divided equally for "each then living child of hers." Barbara Piel died in July 2003, and in October 2004 Fleet Bank instituted two proceedings for judicial settlement of the final account for each trust. This appeal concerns the distribution of approximately $9.7 million in trust principal.

Barbara Piel gave birth to three daughters. Her first daughter, intervenor-respondent Elizabeth McNabb, was born out of wedlock on August 15, 1955 in Portland, Oregon. Within days, Barbara signed a consent to adoption, relinquishing her parental rights and agreeing to Elizabeth's adoption by strangers. An Oregon court finalized the adoption in November 1955 and Elizabeth lived her life in Oregon as a member of the Jones family. There is no indication that Florence Woodward knew of Elizabeth's birth or adoption. Barbara's other two daughters,

Stobie Piel, born in 1959, and Lila Piel-Ollman, born in 1961, are the children of her marriage to Michael Piel.

Fleet Bank cited Stobie and Lila in the October 2004 proceedings, but failed to include Elizabeth or her children as interested persons. In November 2004 Elizabeth moved for permission to intervene and file objections to the accounts, later joined by her two children. Elizabeth objected to each account because it failed to provide her with a one-third distribution of the principal and income of each trust. The parties cross-moved for summary judgment.

Surrogate's Court denied Elizabeth's motions for summary judgment and granted petitioner's motions seeking dismissal of Elizabeth's objections. The Surrogate relied on this Court's holding in *Matter of Best* that class gifts to the issue of a beneficiary do not presumptively include adopted-out children. The Appellate Division reversed, finding inapplicable the reasoning and policy considerations in *Best* because the Woodward trusts were executed prior to 1963 and 1966 amendments in the Domestic Relations Law that had been effective in *Best*. We now reverse and reinstate the Surrogate's decrees.

### Analysis

We begin with the fundamental premise that a court must first look within the four corners of a trust instrument to determine the grantor's intent (*see generally Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256 [1990]; *Matter of Cord*, 58 NY2d 539 [1983]). Only if the terms are ambiguous may a court consider extrinsic evidence. Where, as here, there is no evidence of the grantor's intent to include or exclude a person from the class gift, a court may craft general, yet rebuttable, rules of construction based on statutory interpretation and public policy.

We did just that in *Best*, concluding that a nonmarital child adopted at birth by strangers was not entitled to share in a class gift devised by his biological grandmother to her daughter's issue. The testamentary trust in *Best*, executed in 1973, directed the trustee, upon the biological mother's death, to distribute the trust principal equally among her issue. The mother had two sons—David, born out of wedlock in 1952 and immediately adopted by strangers, and Anthony, born in 1963. The question in *Best*, as here, was whether the adopted-out child was an intended beneficiary of the class gift.

There being no evidence of the grantor's intent, the Court considered the effect of David's status as his biological mother's

nonmarital, adopted-out child. Although there was a rebuttable presumption that nonmarital children could share in class gifts to their parent's issue, David's status as a nonmarital child became irrelevant to the class disposition because of his status as an adopted-out child.* In holding that adopted-out children should be excluded from general class gifts to the biological parent's issue, the Court held that Domestic Relations Law § 117 did not require inclusion of adopted-out children, and that three "[p]owerful policy considerations" militate against inclusion in the class (*Best*, 66 NY2d at 155). We reach those same conclusions here.

Before addressing the policy considerations relied upon in *Best*, we outline the significant change in the Domestic Relations Law that distinguishes the present facts, but not the result.

From 1896 through 1963, an adopted child's right "of inheritance and succession" from the biological family "remain[ed] unaffected" by the order of adoption (Domestic Relations Law § 64, as codified by L 1896, ch 272). Clearly, between 1896 and 1963, New York law permitted an adopted-out child to inherit in intestacy from biological parents (*see Matter of Landers*, 100 Misc 635 [Sur Ct, Oneida County 1917]; *Matter of Foster*, 108 Misc 604 [Sur Ct, Wayne County 1919]; *Matter of Gourlay*, 173 Misc 930 [Sur Ct, Kings County 1940]; *see also* Mem of Commn on Law of Estates, 1963 McKinney's Session Laws of NY, at 1962). Unclear, however, is whether an adopted-out child was presumptively included in a class gift to a biological parent's issue, descendants or children.

In 1963 the Legislature amended Domestic Relations Law § 117 by terminating—for the first time since 1896—an adopted child's rights to inheritance and succession from the biological family (L 1963, ch 406). Effective March 1, 1964, the amendments included a savings clause for wills and irrevocable instruments executed prior to that date.

In 1985, when *Best* was decided, Domestic Relations Law § 117 (1) provided that the "rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption . . . ."

---

* Similarly, in the present case Elizabeth's status as a nonmarital child has no impact on this Court's decision; her status as a child adopted out of the biological family controls the result we reach. Accordingly, there is no denial of equal protection, as she claims.

(As amended by L 1970, ch 570, § 10.) Subdivision (2) clarified that the termination of rights applied "only to the intestate descent and distribution of real and personal property and *shall not affect the right of any child to distribution of property under the will . . . or under any inter vivos instrument . . .* executed by such natural parent or his or her kindred" (as amended by L 1966, ch 14 [emphasis added]). Significantly, the Court determined that this statutory provision "does not mandate that [an adopted-out] child receive a gift by implication," but only protects an adopted-out child's right to inherit when specifically identified in the instrument (*Best*, 66 NY2d at 156). Thus, section 117 (2) merely preserved rights of inheritance expressly intended by the grantor; it did not create additional rights.

As in *Best*, the Domestic Relations Law in effect at the time Florence Woodward executed the trusts does not create rights for an adopted-out child to share in a class gift by implication. *Best* determined that question, concluding that similar statutory language did not create such a right. Nothing in the pre-1964 legislative history or case law, moreover, indicates that an adopted-out child would share in a class gift to a biological parent's issue, descendants or children.

Having determined that the statutory law effective prior to March 1, 1964 does not require a different result, we turn to the strong policy considerations supporting adherence to *Best*.

In excluding adopted-out children from class gifts to the biological parent's issue, the Court highlighted the legislative objective of fully assimilating the adopted child into the adoptive family and, relatedly, the importance of keeping adoption records confidential. From the very inception of the adoption law the Legislature has sought to promote assimilation of the adopted child by providing the new family with the "legal relation of parent and child" (Domestic Relations Law § 64, as codified by L 1896, ch 272; *see also Matter of Cook*, 187 NY 253, 260-261 [1907]). Additionally, by 1924 the Legislature had explicitly recognized the importance of confidentiality in adoption records, and in 1938 it mandated the sealing of those records (*see Matter of Linda F. M.*, 52 NY2d 236, 238 n 1 [1981]). These policy considerations predate the execution of both Woodward trusts.

The facts of this case also compellingly demonstrate the importance of the third policy concern identified in *Best*. As the Court noted, the finality of judicial decrees would be compro-

mised if adopted-out children were included in such class gifts "because there would always lurk the possibility, no matter how remote, that a secret out-of-wedlock child had been adopted out of the family by a biological parent or ancestor of a class of beneficiaries" (66 NY2d at 156). That lurking possibility materialized here. In this case the adopted-out child intervened and relieved the trustee of the duty to identify and cite her. In other cases, neither the family nor the child may be aware of a birth or adoption, thereby placing on a trustee seeking closure the onerous burden of searching out unknown potential beneficiaries.

This case raises additional policy concerns: here we address classes of beneficiaries created in irrevocable instruments prior to 1964. The chances of unearthing adoption decrees potentially dating back to the late 1800s, or of identifying witnesses to recall the details of an adoption, dwindle as time passes. Permitting adopted-out children to participate in a class created by a pre-1964 instrument would pose greater practical problems to the procedural administration of a gift, and—without any legal basis for doing so—would create two classes of beneficiaries, those receiving a gift in an instrument executed before 1964 and those after. The policy interests of finality in court decrees and stability in property titles weigh heavily in favor of consistency with *Best*.

Therefore, we conclude that the *Best* rule of construction also applies to irrevocable trusts executed prior to March 1, 1964. Where, as here, the grantor's intent is indiscernible and the statutory intent at best ambiguous, we conclude that the policy considerations disfavoring inclusion of adopted-out children in such a class determine this case.

Accordingly, the order of the Appellate Division should be reversed, with costs payable out of the trusts to all parties appearing separately and filing separate briefs, and the decrees of Surrogate's Court reinstated.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.